## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION | ) ) ) ) | **FILED** HARRISBURG, PA |
| Plaintiffs, | ) ) ) | SEP 1 9 2019 PER _____ DEPUTY CLERK |
| v. | ) ) | **COMPLAINT** |
| FOSTER WHEELER ENERGY CORPORATION, | ) ) ) | Case No. _3: 19-CV-1620_ |
| Defendant. | ) ) ) ) | |

The United States of America, by the authority of the Attorney General of

the United States, acting at the request of the Administrator of the United States

Environmental Protection Agency ("EPA"), and the Commonwealth of

Pennsylvania, Department of Environmental Protection ("PADEP") file this

complaint and allege as follows:

### NATURE OF THE ACTION

1.     This is a civil action brought against Foster Wheeler Energy

Corporation ("FWEC" or the "Defendant") pursuant to Sections 106, 107(a), and

113(g) of the Comprehensive Environmental Response, Compensation, and

Liability Act, 42 U.S.C. §§ 9606, 9607(a), and 9613(g), as amended by the

Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), and

Sections 507 and 1103 of the Hazardous Sites Cleanup Act, Act of October 18,

1988, P.L. 756, 35 P.S. §§ 6020.507 and 6020.1103 ("HSCA"), regarding the

Foster Wheeler Energy Corporation/Church Road TCE Superfund Alternative Site

("Site") in Mountain Top, Luzerne County, Pennsylvania.  Plaintiffs seek

injunctive relief for the performance of the response actions selected in the

September 25, 2018 Interim Record of Decision ("IROD") and recovery of costs

incurred and to be incurred by the United States and PADEP in response to

releases or threats of releases of hazardous substances at or from the Site.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action and

over the Defendant under 28 U.S.C. §§ 1331, 1345, and 1367, and Section 113(b)

of CERCLA, 42 U.S.C. § 9613(b).

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. §

1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the

relevant releases or threatened releases of hazardous substances occurred within

this district and because the Site is located within this district.

## STATUTORY FRAMEWORK

4.     CERCLA was enacted in 1980 to provide a comprehensive

governmental mechanism for abating releases and threatened releases of hazardous

substances and other pollutants and contaminants and for funding the costs of such

abatement and related enforcement activities, which are known as "response

actions." 42 U.S.C. §§ 9604(a); 9601(25).

5.      Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

> Whenever (A) any hazardous substance is released or
> there is a substantial threat of such a release into the
> environment, or (B) there is a release or substantial threat
> of release into the environment of any pollutant or
> contaminant which may present an imminent and
> substantial danger to the public health or welfare, the
> President is authorized to act, consistent with the national
> contingency plan, to remove or arrange for the removal
> of, and provide for remedial action relating to such
> hazardous substance, pollutant, or contaminant at any
> time (including its removal from any contaminated
> natural resource), or take any other response measure
> consistent with the national contingency plan which the
> President deems necessary to protect the public health or
> welfare or the environment. When the President
> determines that such action will be done properly and
> promptly by the owner or operator of the facility or
> vessel or by any other responsible party, the President
> may allow such person to carry out the action, conduct
> the remedial investigation, or conduct the feasibility
> study in accordance with section 9622 of this title.

6.      For CERCLA response actions and enforcement purposes, the

Administrator of EPA is the President's delegate, as provided in operative

Executive Orders.

7.      Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a):

        (1)   [T]he owner and operator of a vessel or a facility,

(2)   any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, [or]

(3)   any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . .

shall be liable for—

(A)   all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan . . .

8.      Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States is also authorized to seek injunctive relief necessary to abate an imminent and substantial endangerment to the public health or welfare, or the environment, that may result from an actual or threatened release of a hazardous substance at or from a facility.

## THE DEFENDANT

9.      FWEC is incorporated in the State of Delaware.

10.     FWEC is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and Section 103 of HSCA, 35 P.S. § 6020.103.

11.     FWEC is the former owner of approximately 105 acres of property located in the Crestwood Industrial Park complex in Mountain Top, Luzerne

County, Pennsylvania, which was used for the manufacture and fabrication of large pressure vessels ("Former FWEC Facility").

12.    Foster Wheeler Corporation, FWEC's legal predecessor, owned and operated substantially all of the Former FWEC Facility from 1953 through 1974. Specifically during this time, Foster Wheeler Corporation owned and operated approximately 104.3 acres of the Former FWEC Facility.

13.    In 1974, Foster Wheeler Corporation assigned all of the assets of the Former FWEC Facility to FWEC. FWEC acquired the remaining 1.398 acres of the Former FWEC Facility in 1983.

14.    FWEC is the legal successor to Foster Wheeler Corporation.

15.    FWEC owned and operated the Former FWEC Facility from 1974 through 1984, at which time the Former FWEC Facility was closed and offered for sale.

## THE SITE

16.    The Site is comprised of three named areas.

17.    The Site includes the Defendant's Former FWEC Facility.  The Site also includes any areas at which hazardous substances released at or from this facility have come to be located, including an area of groundwater contamination located south and southwest of the Former FWEC Facility and encompassing approximately 295 acres of mixed land use (mainly residential), which extends

5

from east to west along Church Road and Watering Run (the "Affected Area"). The Site further includes eight surrounding industrial properties located immediately south and west of the Former FWEC Facility (the "SIPs").

## GENERAL ALLEGATIONS

18.   Foster Wheeler Corporation, FWEC's former parent company, acquired nearly all of the Former FWEC Facility in several transactions between 1953 and 1961, and operated the facility until 1974.

19.   Foster Wheeler Corporation transferred its ownership and operation of the Former FWEC Facility and all associated assets to FWEC in 1974.

20.   FWEC owned and operated the Former FWEC Facility from 1974 until 1984, including a small portion of the facility that FWEC acquired in 1983.

21.   FWEC and Foster Wheeler Corporation manufactured and fabricated large pressure vessels utilized in various industrial applications, including oil refineries, electric utility plants, and the shipping industry, at the Former FWEC Facility.

22.   In connection with this activity, FWEC and Foster Wheeler Corporation utilized trichloroethylene ("TCE") as a metal cleaner for their manufacturing and fabrication processes at the Former FWEC Facility, including to remove lubricants or cutting oils from machined metal parts.

23.    TCE is a listed hazardous substance, 40 C.F.R. § 302.4, and is a hazardous substance within the meaning of 42 U.S.C. § 9601(14).

24.    Hazardous substances, including TCE, were released and disposed of at the Former FWEC Facility during the times that FWEC and its corporate predecessor owned and operated the facility.

25.    From 1984 to 1991, FWEC conducted several Site investigations under the direction and supervision of Plaintiffs. These investigations revealed that soil and groundwater at the Former FWEC Facility was contaminated with TCE.

26.    Between 1991 and 1993, FWEC implemented several Interim Remedial Measures under the direction and supervision of Plaintiffs, including a groundwater extraction and treatment system, to remove TCE contamination from the soil and control and stabilize TCE contamination in the groundwater downgradient of the facility. FWEC has continued to sample and monitor the effectiveness of these actions since 1995.

27.    Since 2004, when FWEC discovered TCE contamination in groundwater located in the Affected Area, FWEC has performed additional environmental investigations and response actions to address groundwater contamination in the Affected Area, under the direction and supervision of

7

Plaintiffs, pursuant to an Administrative Order on Consent for Removal Response Action, EPA Docket No. CERC-03-2005-0349DC.

28.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA proposed the Site for listing on the National Priorities List ("NPL") on April 9, 2009. The Site has not been listed on the NPL because FWEC agreed to perform cleanup activities under the Superfund Alternative Approach, as set forth in EPA's June 17, 2004 Office of Solid Waste Remediation ("OSWER") Directive No. 9208.0-18 (superseded by the Updated Superfund Response and Settlement Approach for Sites Using the Superfund Alternative Approach, OSWER Directive No. 9200.2-125 (September 28, 2012)).

29.     On April 9 2009, pursuant to an Administrative Order on Consent for Remedial Investigation/Feasibility Study, Docket No. CERC-03-2009-0061DC that FWEC entered into with EPA, FWEC agreed to perform a Remedial Investigation and Feasibility Study ("RI/FS") of the Site as part of the CERCLA process of remedy selection.

30.     FWEC commenced the RI/FS in April 2009, pursuant to 40 C.F.R. § 300.430. During the course of the RI/FS, FWEC performed additional interim response actions, including the installation of vapor intrusion mitigation systems.

31.     EPA approved FWEC's Final RI Report on June 21, 2017, and the Final FS Report in April 12, 2018.

32.     In accordance with the National Contingency Plan, 40 C.F.R. Part
300, as amended ("NCP"), EPA issued an IROD on September 25, 2018, which
described the selected Interim Remedy for the Site.  The IROD addresses
sediment, soil, and groundwater contamination at the Former FWEC Facility and
Sitewide vapor intrusion, including the response actions FWEC has taken to date
that are still operational (the groundwater extraction and treatment system installed
in the early 1990s and the vapor intrusion mitigation systems installed during the
RI/FS).  The IROD does not address groundwater contamination in the SIPs and
Affected Area, specifying that EPA requires additional information to screen and
evaluate remedial alternatives for those aspects of the Site.  EPA will select a final
remedy for the entire Site, including the Former FWEC Facility, the SIPs, and the
Affected Area, in a future decision document.

33.     On May 22, 2019, EPA entered into an Administrative Order on
Consent for Interim Remedial Design, EPA Docket No. CERC-03-2019-0051DC,
with FWEC requiring FWEC to commence the Interim Remedial Design for the
Interim Remedy selected in the IROD.

## SPECIFIC ALLEGATIONS

34.     The Site and Former FWEC Facility are each a "facility "within the
meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and a "Site" within
the meaning of Section 103 of HSCA, 35 P.S. § 6020.103.

9

35.    TCE is a "hazardous substance" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601, and Section 103 of HSCA, 35 P.S. § 6020.103.

36.    Hazardous substances, including TCE, were poured onto the ground or were buried, dumped, disposed of, or leached into the soil, surface and/or groundwater at the Former FWEC Facility and Site.

37.    FWEC and its corporate predecessor used TCE as part of their manufacturing and fabrication activities at the Former FWEC Facility.

38.    FWEC and its corporate predecessor disposed of hazardous substances, including TCE, at the Former FWEC Facility.

39.    Hazardous substances, including TCE, were released to the environment, including soils, at and from the Former FWEC Facility during the times that FWEC and its corporate predecessor owned and operated the facility.

40.    Hazardous substances, including TCE, initially deposited at the Former FWEC Facility, have come to be located at the Site, including in the groundwater beneath and downgradient of the Former FWEC Facility.

41.    As a result of the releases or threatened releases of hazardous substances, including TCE, at or from the Site, EPA and PADEP have conducted and will continue to conduct various response actions at the Site.

## FIRST CLAIM FOR RELIEF
## (LIABILITY FOR RESPONSE COSTS UNDER CERCLA § 107 and HSCA § 507)

42.     Paragraphs 1 through 41 are realleged and incorporated herein by reference.

43.     There have been "releases" and/or "threatened releases" of hazardous substances into the "environment," within the meaning of Sections 101(8) and (22), 104(a), and 107(a) of CERCLA, 42 U.S.C. §§ 9601(8) and (22), 9604(a), 9607(a), and Sections 103, 501, 507, and 701 of HSCA, 35 P.S. §§ 6020.103, 6020.501, 6020.507, and 6020.701, at or from the Former FWEC Facility and the Site.

44.     In connection with these releases or threatened releases of hazardous substances at or from the Former FWEC Facility and the Site, the United States and PADEP have taken and will continue to take response actions, and have incurred and will continue to incur costs of response, within the meaning of Sections 101(25) and 107 of CERCLA, 42 U.S.C. §§ 9601(25) and 9607, and Sections 103, 501, and 507 of HSCA, 35 P.S. §§ 6020.103, 6020.501 and 6020.507.

45.     The response actions taken and to be taken at the Site are not inconsistent with the NCP.

11

46.     Defendant is the former owner and/or operator of a facility and/or Site from which there has been a release or threatened release of a hazardous substance, which has caused and continues to cause the United States and PADEP to incur response costs.

47.     Pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), and Section 507 of HSCA, 35 P.S. § 6020.507, Defendant is liable, as a person who at the time of disposal of a hazardous substance owned and/or operated a facility at which such hazardous substance was disposed of, to the United States, for all costs incurred and to be incurred by the United States, and to PADEP, for all costs incurred and to be incurred by PADEP, in connection with the Site, including enforcement costs and interest on all such costs.

48.     Under Sections 507 and 701 of HSCA, 35 P.S. §§ 6020.507 and 6020.701, Defendant is liable to PADEP for all response costs incurred or to be incurred by PADEP in connection with the Site.

## SECOND CLAIM FOR RELIEF
## (LIABILITY FOR PERFORMANCE OF INTERIM REMEDY TO ABATE ENDANGERMENT UNDER CERCLA § 106 and HSCA § 1103)

49.     Paragraphs 1 through 48 are realleged and incorporated by reference.

50.     The President, through his delegate, the Regional Administrator of EPA Region III, has determined that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of the

releases and/or threatened releases of hazardous substances, including TCE, at or from the Site, and has determined that response actions are necessary at the Site. PADEP, as the State Agency responsible for the protection of the public's health and the environment, has also determined that response actions are necessary at the Site.

51.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a) authorizes the United States to bring an action to secure such relief as may be necessary to abate a danger or threat at the Site. Section 1103 of HSCA, 35 P.S. § 6020.1103, similarly authorizes the Department to bring an action to secure such relief as may be necessary to abate a danger or threat at the Site.

52.     Implementation of the Interim Remedy selected in the IROD is necessary to abate the danger to public health or welfare and the environment posed by the actual and threatened releases of hazardous substances, including TCE, at the Site.

53.     Pursuant to Section 106(a) of CERCLA, 42 U.S.C. §§ 9606(a), and Section 1103 of HSCA, 35 P.S. § 6020.1103, Defendant is liable for the implementation of the Interim Remedy selected in the IROD.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment for Future Response Costs under CERCLA § 113(g)(2))

54.     Paragraphs 1 through 53 are realleged and incorporated by reference.

55.   The United States and PADEP will continue to incur response costs at the Site including, *inter alia*, oversight of the performance and long term monitoring of the Interim Remedy and enforcement costs.

56.   Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States and PADEP are entitled to a declaratory judgment that will be binding on any subsequent actions to recover future response costs or damages, finding that Defendant is liable to the United States and PADEP, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for future response costs, not inconsistent with the NCP, to be incurred by the United States and PADEP with respect to the Site.

## PRAYER FOR RELIEF

57.   WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment in favor of the United States and PADEP, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and Section 507 of HSCA, 35 P.S. § 6020.507, holding Defendant liable for all unreimbursed costs incurred by the United States and PADEP in connection with the Site, including interest;

b. Enter judgment in favor of the United States and PADEP, under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), and Section 1103 of HSCA, 35 P.S. § 6020.1103, holding Defendant liable

14

for performance of, and ordering Defendant to perform, the Interim Remedy selected in the IROD, to abate the conditions at the Site that may present an imminent and substantial endangerment to the public health or welfare or environment;

c. Enter a declaratory judgment in favor of the United States and PADEP and against Defendant, pursuant to Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), that will be binding in any action to recover further response costs incurred by the United States and/or PADEP in connection with the Site, finding Defendant liable for such future responses costs.

d. Award the United States and PADEP their costs of this action; and

e. Grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

**FOR THE UNITED STATES OF AMERICA:**

ERIC GRANT
Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

Robyn E. Hanson
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
((303) 844-1558
robyn.hanson@usdoj.gov


DAVID J. FREED
United States Attorney

Samuel S. Dalke
Assistant U.S. Attorney
PA Bar No. 311803
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108-1754
Tel: (717) 221-4482
samuel.s.dalke@usdoj.gov

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:**

Michael T. Ferrence
Assistant Counsel
Pennsylvania Department of Environmental
Protection
Office of Chief Counsel, Northeast Region
2 Public Square
Wilkes-Barre, PA 18701-191
(570) 826-2259
mferrence@pa.gov